So I understand that there's a splitting of time that you're going to take eight minutes and then Mr. Trajano is taking the rebuttal at seven minutes? That is correct, Your Honor, if it pleases the court. Your Honor, the issue in this case is pretty straightforward and it is whether on their medleya... I'm sorry, can you speak up, counsel? Yes, Your Honor. I'll pull the microphone closer to you. Yeah, we're It's whether under medleya the United States can exercise jurisdiction over a vessel that claims registry or citizenship or the master claims citizenship of a nation and that nation is unable to confirm or deny the Why is that? It's because under international law there are certain reasons for which a vessel can be deemed to be stateless and that is if the master of the vessel refuses to claim citizenship of the vessel or the master of the vessel claims many different nations or has different nation's flags or in the case where the master of the vessel claims citizenship and the claimed nation denies or asserts affirmatively that that vessel is not registered in that country. So why is international, why should we look at because when Congress enacted Article 1, Section 8, which is the source of authority under medleya, where Congress was given the power to define and punish piracies, number two to define and punish felonies on the high seas, and number three to define and punish... Let me ask you this, counsel. Cutting to the chase here and focusing on the Lotus principle, what principle of international law is the defense invoking in this case? Because I know that you have some guidance from Davila Reyes which has now been vacated and that seems to stand for the proposition that an oral claim of nationality can create some sort of prima facie case that then has to be rebutted. If there's a failure of the claimed country to unequivocally affirm that, then it's not enough rebuttal. Is that the principle of international law that you are invoking? The principle of international law that we're invoking is that for the vessel to be deemed stateless, the claimed country must deny or must affirmatively state that that vessel is not of that country. When the master of the vessel claims registry or claims citizenship of a vessel, that's a prima facie evidence that... All right, so it's the rule that was basically pronounced in Davila Reyes. Correct, but it has the historical links to international law. We have to wrestle with our own precedent here, so we're not going to go into that now. Quote, compliance with international law does not determine whether the U.S. may apply the MDLEA to a defendant's conduct. Doesn't that undermine your argument that the statute goes beyond proper authority by not complying with international law? Well, I think that under the case law, there's case law from this circuit in the Caicedo case which also involved a vessel that was stateless. And in that case, there was no doubt that the vessel was stateless. And what the defendant in that case argued was that because there was no nexus between the drug-laden vessel and the United States, that it was a due process violation to prosecute him here in the Ninth Circuit. The district court granted. The Ninth Circuit reversed. But interestingly, the Ninth Circuit, in reversing, specifically looked into international law. And the analysis that the Ninth Circuit said was that, look, when someone, there's a vessel is stateless, because in that case it was, what that master has done is that they have shrugged themselves at the yoke of being under the flag of a nation. And instead, they have subjected themselves to be international pariahs. And that's what gave jurisdiction under Midlayer to be prosecuted as a stateless vessel. But Mr. Chavez did not shrug himself of the yoke of Ecuador. He claimed Ecuador. So he was not an international pariah, which would have subjected him to be a stateless vessel under Midlayer. Ecuador initially confirmed, then sent another letter to the U.S. saying, no, we cannot confirm or deny. And that's not enough to rebut that prima facie evidence of that Section 8, which gives Congress those powers. We have to take into consideration the context in which this happened. And that was at a time when the United States wanted to find its place in the law of nations. They wanted to set a political structure which would allow the United States to adhere to concepts of international law. But getting back to my question of even assuming that the felonies clause is somehow constrained by some international law principle, I don't know what you're relying on as the source of the principle that you're relying on. I looked at Davila Reyes and all of the sources that cite it. None of those sources squarely stand for the proposition that if the master of the nationality, but the country neither confirms or denies that somehow that's a failure to rebut the prima facie case. I don't see a source for that. What is your best source for that proposition? Well, looking at the clause at Article 1, Section 8, Clause 10 itself, it has three grants of power. And the first one, which is the authority to define and punish piracies, those we know that are limited by international law. And that's what the United States Supreme Court in the Furlan case held back when it was analyzing whether or not the 1790s Crime Act, a murder could be prosecuted as a form of piracy. And the Supreme Court looked into international law and held that you can't put murder into the umbrella of piracy and prosecute that under the Crimes Act, under the 1790 Crimes Act. And then if we looked at the third one, which is the third grant of power to define and punish offenses against the law of nations, I think that there's a very illustrative example from the 11th Circuit in the Belize Act case where the United States tried to prosecute a drug-laden vessel off the Panamanian waters, claiming that that was an offense against customary international law. And the 11th Circuit said, no, you cannot, that's not, might be a crime. It is a crime, but it's not one that's recognized under customary international law. So the clause itself, Article 1, Section 8, is bookended, the one that we're focusing on, the felonies clause, is bookended by international law limits. So under your rule, in a situation like this, no country has jurisdiction. What can be done is what the District of Puerto Rico is actually doing under Davila, after the issuance of Davila-Reyes, where the government is seeking consent from the claimed nations to prosecute the individuals arrested from those vessels. So there's a way out in order to... I understand your argument on the way out, informally, basically, seeking consent. But from a jurisdictional standpoint, no country would have jurisdiction at that point. Absent, well, there's not been an affirmative denial. So the country which would have jurisdiction over that would be Ecuador. But certainly not the United States, which is the focus here of the, on their medleya. All right. Thank you. Thank you for your time. Let's hear from the government, because actually, Mr. Torano wanted to do rebuttal. That's how they decided to split up their time. Oh, sorry. My mistake. Good morning, Your Honors. And may it please the Court, Mark Rahe, for the United States. Your Honors, the district court here reached the correct conclusion by denying the motion to dismiss. And as we set out in our papers, there's basically two ways to look at this. Two big Roman numerals. One, whether congressional exercises under the Felonies Clause are even implied, sub silentio, a limit under international law. And we set out all our reasons why we don't believe that's the case. And then alternatively, even if you assume that international law is such an implicit limit, that the particular statelessness definition here accords with international law. And here, I mean, you know... The first question, but not the second. Correct. And in so doing, you know, the district court has, and I believe Judge Forrest might have been, you know, quoting from one of these cases there, is a legion of authority that says, as a general rule, international law does not limit congressional power. In fact, you have cases that say, you know, even if we have a statute that violates international law, as long as other statutory cannons are met, we are going to enforce that. But here, if I was reviewing, I believe, the historical sources at pages 27 to 29 of our brief, I mean, when you look at the drafting history, and this was unusual for me, I've been 23 years in this job, and I mean, it's not easy to find these records of the debates from the Constitutional Convention. That's the problem of turning the judges into historians. We're not all good at that, myself included. I'll be the first to say I'm not good at the deep learning of most judges. So it seems to me that the second question is almost an easier one to answer, because then we can just find whether there is such a rule in international law, and then figure out whether the congressional definition of a stateless vessel violates such a principle. In our position on that, I mean, the thing about international law, wow, there's no, you know, single body of law. When you look at the rules, is it you see how nations have acted. What I attempted to do in the government's brief, the only, you know, I think the two biggest documents of the Geneva Convention on the High Seas, and the, you know, the UNCLOS, the United Nations Convention on the Law of the Seas. They have, you know, a few provisions about statelessness. The entire foundation of international law, the flag state system, is that most of international law affirmatively talks about the And what the, both of those treaties that I just cited say are that in order to properly claim registry, the, you know, the nation has its own rules, and it must provide documents. So, you know, the only people who can make a legitimate claim of registry are ones who have, in fact, been given these documents. Beyond that, we cite a commentator that says, what's interesting is there's not a lot of law, since there's so much focus on what it takes to be a registered ship, international law doesn't provide a lot about what it means to be stateless. But that's why we cited the Lotus Principle, which Your Honor referred to earlier, and that's the 1927 seminal case, which basically says that in international law, if there's no affirmative prohibition, a member state is free to define something as it best sees fit. And here, you know, originally, it's true. Like, you know, the statute sets out, sure, if somebody makes a claim of registry and the country claimed affirmatively denies it, that's one way to prove statelessness. The only way that's present in the Geneva Convention Treaty and the United Nations Treaty is when the master of a ship claims two countries. So, you know, this particular provision, this third provision, it hasn't been reached by any prior authority. It's not something that's arbitrary and the foundation, as I pointed out earlier, of flag state jurisdiction is that in order to properly claim registry, you have to have documents. This is not an onerous burden to put on the people who travel to seize the world. It's not unlike a driver's license. We all know that we have to have a driver's license. This is all they're saying. All the international legal scholars agree that documents are conclusive proof. Flying a flag, which didn't happen here, this particular GOFAS vessel, as the factual record indicates, showed no outward signs of nationality. That's prima facie, and those are the only rules. You know, I know the defense, and this was the Davila-Reyes panel opinion, Davila-Reyes, the very most, you know, where it stands, its bedrock premise is unsupported, namely that a mere oral claim to nationality gives rise to a prima facie violation. I've said this twice, 20 times, there's never a site for that. My review of, you know, of all the various treatises and the legal scholars doesn't show that to be the case. Indeed, I think that this court, the Ninth Circuit, has previously noted that stateless vessels are essentially international pariahs, I think is the phrase in one of those cases, that they literally are, there's no restriction on international law with respect to stateless vessels. Exactly, and that, you know, because there needs to be order on the high seas, and so, you know, for the Congress to come up with this, I believe it was in the 1996 Coast Guard authorization statute, that's when they added this provision. They wanted to, you know, they wanted to cut out a way for people who move these drugs on the high seas to just sort of escape jurisdiction and escape responsibility. So, you know, here, I mean, to go back to what, you know, Judge Winn, you were saying, if you want to, you know, not reach that initial constitutional claim, you know, the fact is that under the Lotus principle here, this is not outside the pale. This, you know, this is a to ask somebody, if you're going to claim registry, you ought to be able to have a way to prove it. And if the claim nation can neither confirm nor deny, I believe the statute uses the language, you know, affirmatively and unequivocally, affirmatively and unequivocally agree that that vessel is yours, that is not unreasonable, and that's not in violation of any international law. So, you know, I mean, unless there's more questions about international law, you know, I guess the only thing I do want to point out, though, again, and even if this court may be on further review, you know, if you don't think that first issue is as thorny, James Madison, looking at these records, made it very clear that, you know, felony wasn't even a term used in the law of nations. Felony was inherently vague. Governor Morris, all of those, you know, authoritative framers that we quoted, pages 27 through 29 of our brief, said, look, for felonies on the high seas, we want Congress to have maximum leeway. This is a, you know, a vague term in English common law. We shouldn't use any foreign law as the standard. And, you know, to that extent, I believe Justice Story's commentaries on the Constitution agree as much, too. So, I know I actually have a lot of time, but... I just, I have one other question. Just, you had preliminarily, the government had noted the matter of whether or not an appellate waiver bars this challenge. Do you want to be heard on that any further? Because the, I'm not certain that the case law supports the matter of a waiver based upon the facts here, apart from when you get to the international issues and the felonies clause under Article I, Section 10, Clause 10. But in terms of the matter of the guilty plea in this case and a waiver of appeal, does that waiver include a constitutional challenge? No. You know, I wanted to preserve that. I like how one of the defense counsel put it in a reply brief that we just want that argument preserved. You know, there is a clear difference here in class versus United States. That was silent on the ability to challenge a conviction. Our waiver clearly says all aspects of the conviction and sentence. But this circuit, I believe it's Caporal, has case law going back, you know, decades that if you're challenging the jurisdiction or constitutionality, that goes to jurisdiction. So we are happy to have the issue presented for resolution. So... We're going to stick with Caporal. There you go. And I will, you know, yield the remainder of my time to the defense then. Thank you, counsel. Good morning. I'm Ken Triano. I represent Luis Marin and I'm arguing on behalf of both in rebuttal. May it please the court. Well, first, let me start off by saying I've, this morning I was reading more about the law of nations and I'm grateful that that's not the issue in this case because no one seems to have a full grasp on that, at least none of the published opinions that I've read. This is a specific issue of the felonies on the high sea. And the issue of whether it's violating international law, that is not really what the issue is. It's whether or not authority exists for Congress to promulgate or pass a law that contradicts the framers' intent to embrace a concept of international law when they pass, when they put this clause into the Constitution, specifically in this case, felonies on the high sea. So they're not saying that there's a law out there that Ecuador passed that now you're violating that. It's not that. It's that this was embraced by the framers and then they put this in the Constitution. And then I believe Davila Reyes did do a great job of explaining the history of that. But it's also explained in the Furlong case, in the Smith case, and the other one that's eluding me at the moment, dealing with murder or robbery on the high seas. In fairness to you, the Furlong case, you've gone back to 1820, have you not? In terms of Judge Wynn was noting the history. So the Furlong case is an 1820 case, correct? That was just yesterday. I just want the younger lawyers to know how far back we've gone in the room here. I'm not sure if that's on Lexis or Nexus in 1820. But that's the case you're referring to, right? I'm teasing you here. We should be grateful to have that opinion because they were closer in time to the framers and more familiar. There was a more working knowledge of what was going on at the time. Now, Judge Wynn mentioned the Lotus Principle. And I'm going to have to read this because this was not my argument. But the Lotus Principle is usually considered a foundation of international law that says a sovereign state may act in a way that they wish so long as they don't contravene an explicit prohibition. But all the cases that have cited that and discussed it involve situations where none of the crew members made a claim of nationality, like in this case, Ecuador. And I note that government counsel mentioned that, well, you know, who gives them a right to claim nationality just by saying it? Well, the very statute that we're discussing is 70502D1C. Well, if you read down to 70502E, it says that how to make a claim is only by documents or a flag or a verbal claim by the captains. So it's only. So this statute really sort of took that and then grafted on its own version of, well, maybe if they don't answer the phone, then we can prosecute these people, even though they're foreigners on a foreign boat and they're nowhere near the United States. And there's no nexus with the United States, which leads me to the next issue, which is Judge Forrest mentioned our own case law. And our own case law doesn't address this issue. All of the cases address this statute in general. And mostly, they're dealing with whether there's a nexus with the United States or interstate commerce, but none of them actually take on this clause and address this specific subsection as a basis for claiming jurisdiction over people from Ecuador. Well, so then let's go back to Judge Wynn's question to your colleague, which is let's assume you're right that Congress is constrained by international law. What is the international law that is contrary to that provision in the statute that Congress passed about the oral declaration? What treaty? What source do you have other than Davila-Reyes? Well, the cases that they discuss, I would also just, so I don't forget it, there was an excellent law review article, two of them that were cited by my co-counsel, by I think it's Professor Kantorovich, he wrote two articles on this subject. And they do go into these issues as deep as Davila does. But do those articles identify a source? Because certainly a law review article cannot be a source of international law. No, it's not. But they discuss, really, I think going back to the point, see when I made this motion in the district court, I was relying on Davila, then it got vacated. So I had to rewrite it in a way that didn't cite Davila, but made similar arguments. Even if Davila-Reyes is still good on the books, it's really not binding in the Ninth Circuit. So in order to decide this principle in the first, this case in the first instance, we would still look at the sources cited in Davila-Reyes to see whether there is such a rule in international law. And when you track the sources cited in Davila-Reyes, it really doesn't squarely stand for that principle. That's really my problem with the case. Well, I think it does because it's discussion of the three clauses, and really all three of them are in the same section of law. But that only gets to the point of does international law constrain Congress in this arena? It doesn't get to the point of what is the international law that conflicts with what Congress did. Well, I don't know that there was an international law at the time. It's a little vague as to what every country was saying. And I think that that's why part of the issue of the law of nations was part of the clause, too, in the discussion. Right. I guess I'm still confused by your argument because you are really focusing very hard on the fact that the framers intended congressional power to be constrained in some way by international law. So I think what Judge Boris and I are focusing on is it's confusing. That's a hard issue. We have to go back into deep dive into the historical records. Let's give you that. Let's assume for the sake of argument that somehow international law constrains congressional power to enact this particular statute. Then the next question in order for you to prevail is what principle of international law was violated by this congressional choice to handle or to define stateless vessels in this manner? And I'm still searching for a source. It's actually the Declaration of War, I believe, is essentially what Congress has done through creating this vague section. Because now the Customs, Border Patrol, whoever, the Coast Guard, the Navy, they can go into somebody else's, just up to the edge of their water, with a boat that belongs to another country, citizens of another country, and take them into custody, take whatever's on their boat, and sink the boat on the high seas. Bring the people all the way to Florida and decide a day after Davila Reyes changed course that they're going to prosecute them in San Diego instead of Florida or Puerto Rico. And that's what happened. And that is on the record in this case. I don't even want to try to pronounce the name of the case. But on March 17th, the Davila case, which relied on the protective principle, said, we're not going to do that. We were wrong. Our own court, en banc, said we were wrong. So we're going to go back and we're going to rewrite this opinion. The next day, these individuals were arrested and on their way to Florida. They were held in Florida for a few weeks and then sent to San Diego when they were indicted shortly after. So I'm not sure if that answers any of the question. But I think it shows that the United States has the ability to do whatever it wants, wherever it wants, whenever it wants, unless these statutes are construed very strictly. And I believe that that is what we're asking for in this case. All right. Thank you very much, counsel. Our questions took you over time. The matter is submitted for decision by this court. And we are in recess for the day. All rise. This court for this session stands adjourned.
judges: NGUYEN, FORREST, Bennett